## HERNDON, Appellant, v. LEWIS.

### Division One, May 27, 1903.

1. **One New Trial**: DISCRETION OF TRIAL COURT. The trial court has a discretion to grant one new trial on the ground that it believes the verdict is against the weight of the evidence, and if there is any substantial evidence on which such belief can be founded, the appellate court will not interfere with the act of the trial court in granting one new trial in such case.

2. ———: ———: SUIT ON NOTE. In this case, which is a suit on a note, the payee's son testified that the maker authorized him to make a payment of $25 on the note and he did so, and the maker testified that he authorized the son to make a credit of $25 thereon, to save the bar of the limitation statute. The case was submitted to the jury on the theory that if the $25 was a payment the note was not barred, but if a mere credit it was barred. The jury by their

verdict believed the payee's son, and the court by granting a new trial believed the maker. *Held*, that this court will not say that the trial court erred in granting one new trial.

3. Note: NAME ON BACK: PAROL EVIDENCE. One who writes his name on the back of a promissory note of which he is not the payee, is prima facie a joint maker, but as between such person and the payee parol evidence is admissible to prove the character and extent of the undertaking and obligation, whether as joint maker, indorser, surety or guarantor.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

AFFIRMED.

*Dickson, Smith & Dickson* and *Douglas W. Robert* for appellant.

(1) Where a motion for new trial is granted on the ground that the verdict is against the weight of the evidence, such action will not be sustained where it plainly appears that injustice has been done or the discretion of the trial court has been unsoundly or arbitrarily exercised. Parker v. Cassingham, 130 Mo. 348; Bank v. Wood, 124 Mo. 76; Van Liew v. Barrett Co., 144 Mo. 509; Taylor v. Railroad, 163 Mo. 183. (2) One who places his name upon the back of a promissory note, not being a payee therein, before its delivery to the payee, becomes thereby a co-maker, unless prior to the signing and delivery of the paper there was an express agreement between him and the payee that his obligation should be that of indorser or something other than that of a maker. Otto v. Bent, 48 Mo. 26; Cahn v. Dutton, 60 Mo. 297; Rossi v. Schawacker, 66 Mo. App. 68; Schmidt Malting Co. v. Miller, 38 Mo. App. 254; Boyer v. Boogher, 11 Mo. App. 132; Mammon v. Hartman, 51 Mo. 168; Kingman & Co. v. Cornell-Tebbetts M. & B. Co., 150 Mo. 282; Adams v. Huggins, 73 Mo. App. 140; Malone v. Fidelity & Casualty Co., 71 Mo. App. 1.

*John H. Overall* and *Carter & Sager* for respondent.

(1). Where a motion for a new trial is granted on the ground that the verdict is against the weight of the evidence, such action will be sustained unless it plainly appears that great injustice has been done, and that the discretion of the trial court has been unsoundly and arbitrarily exercised. Bank v. Wood, 124 Mo. 72; Parker v. Cassingham, 130 Mo. 348; Van Liew v. Barrett Co., 144 Mo. 509; Taylor v. Railroad, 163 Mo. 185; McKay v. Underwood, 47 Mo. 185; Bourghman v. Fulton, 139 Mo. 557; Bank v. Armstrong, 92 Mo. 265; Eidemiller v. Kump, 61 Mo. 340; Reid v. Ins. Co., 58 Mo. 421; Cosgrove v. Leonard, 134 Mo. 419. (2) If the order granting the new trial can be sustained, either for the reason given, or upon any other of the grounds stated in the motion, the action of the trial court must be sustained. Ittner v. Hughes, 133 Mo. 679; Hewitt v. Steele, 118 Mo. 463; Bank v. Wood, 124 Mo. 72.

*Dickson, Smith & Dickson* and *Douglas W. Robert* for appellant in reply.

(1) The party relying on payment to stop the statute of limitations must not only establish that it was made, but made by the authority of the defendant. Regan v. Williams, 88 Mo. App. 586; Goddard v. Williamson's Admr., 72 Mo. 133; Phillips v. Mahan, 52 Mo. 197; Gardner v. Early, 78 Mo. App. 346. (2) If payment be made by authority of one of the makers of a note during the life of the note, it is a complete avoidance of the bar of the statute of limitations as to all of the makers of the note or those jointly liable thereon. Kemble v. Logan, 79 Mo. App. 253.

MARSHALL, J.—This is an appeal by the plaintiff from an order entered by the circuit court, granting

the defendant a new trial upon the ground that the verdict was against the weight of the evidence.

The action is upon a promissory note, dated June 15, 1885, for $8,950, payable at one year, to the order of the plaintiff, and made by B. W. Lewis. The name of the defendant, Turner T. Lewis, was written on the back thereof before its delivery to the payee. The answer is a general denial, with special defenses: first, that it was agreed between plaintiff and defendant at the time the note was executed that the defendant should be liable only as an accommodation indorser, and that no notice of demand and refusal to pay was ever given to the defendant, and the note was never protested for non-payment; and, second, the ten-year statute of limitations. The petition alleges a payment on the note by B. W. Lewis, of $1,231.58, on February 25, 1886, and another payment on the note by B. W. Lewis of $25 on February 1, 1892.

The evidence of the plaintiff's son who went to Colorado in 1892 for his father, to collect the note, is that he told B. W. Lewis that the note was about to be barred by limitation, and asked him to make a payment to keep it alive; that B. W. Lewis said he was wholly unable to pay anything, but said Lewis said, "I will authorize you to make a payment for me of $25 to keep the note alive;" that thereupon he returned to Springfield, Missouri, and handed his father, the plaintiff, twenty-five dollars, and indorsed the payment on the note. B. W. Lewis, who testified for the defendant, corroborates this, except that he says he authorized him to make a credit of twenty-five dollars on the note, and did not say he authorized him to make a payment on the note, but he says he did it with the understanding that it would prevent the statute of limitations from running against the note. It appears that no demand was ever made on B. W. Lewis by Herndon, the son, for the twenty-five dollars, and it has never been repaid.

Touching the defense of an agreement that the defendant should be liable only as an accommodation indorser, the defendant testified: "Q. State the circumstances attending the loan and the execution of the note; what was said at the time between the parties, and what was said by you, if anything? A. Mr. B. W. Lewis stated to me that he could borrow $8,950 from Capt. Herndon for a year in case I would become his indorser, and I told him I would.

"Q. Was Capt. Herndon present? A. I do not know whether Capt. Herndon heard the conversation or not, but he was in the room.

"Q. Now state at the time of the note what was said? A. I do not know that there was anything more said; the note was indorsed and handed to Mr. B. W. Lewis."

Touching this defense the plaintiff testified as follows:

"Q. Will you go on and state what took place between you and Ben W. Lewis at the time the note was made? A. When this note was made Ben Lewis came to me and said: 'I want to get all the money I can to get out of trouble.' I said: 'What can you give?' and he said: 'I will give T. T. Lewis as security.'

"Q. Go ahead? 'Give Turner as security?' A. 'T. T. Lewis,' and I said, 'that will do, I will let you have all that I have got, $8,950,' and he took it all.

"Q. You gave him that amount of money? A. Yes, sir.

"Q. Did you see the note signed by Mr. Lewis? A. Yes, sir.

"Q. I will ask you what he did with it after he had signed it? A. He gave me the note.

"Q. When was the name on the back of it put on there, if you know? A. It was done at the time, before he gave me the note.

"Q. By whom? A. Turner Lewis.

"Q. Did you have any talk at that time with Turner Lewis about signing the note? A. No, sir.

"Q. Respecting the signing of the note? A. No, sir.

"Q. Did you have any understanding, or agreement or talk of any kind or character with Turner Lewis respecting his signing that paper? A. No, sir."

On cross-examination the plaintiff testified as follows:

"Q. What did you say that Mr. Lewis told you that he would do if you would let him have the money? A. He says, 'I will give you T. T. Lewis as security-indorser.'

"Q. What was that last word you used? A. He meant security.

"Q. I don't care what he meant; what did you say he said? A. I guess I made a mistake in that.

"Q. What did you say? A. I said security.

"Q. What is the other word you used? A. I don't know.

"Q. Didn't you use the word 'indorser' just now? A. I think I did.

"Q. Just now? A. Yes, sir.

"Q. Why do you tell me you used security? A. I thought it meant the same.

"Q. You knew that I was asking you for that word, didn't you? A. No, sir.

"Q. You didn't? A. No, sir.

"Q. You would not repeat it again to the jury? This is your signature (handing paper to witness), is it not? A. Yes, sir; that is mine.

"Q. That is your deposition; you read it and signed it? A. Yes, sir.

"Q. When your deposition was taken, I will ask you if this question was asked you? 'Now, state under what circumstances—just state now what occurred between you and Mr. Lewis at the time of the loaning of this money?' A. Which Mr. Lewis?

"Q.   You know who you loaned the money to?   A. I know.   B. W. Lewis.

"Q.   You signed that deposition?   A.   I know it.

"Q.   The question was asked you, 'Just state now what occurred between you and Mr. Lewis at that time of the loaning of this money?'   I will ask you if this is your answer; 'Well, Mr. Lewis was—very well—if I understand it right, in the Meramec Iron Mining Company, I think that was it, and he says, "I want you to let me have all the money you can, and I will get Turner's indorsement."   I think that was what he operated, a mine, I am not sure about it, and he wanted money, and I let him have it with Turner's indorsement, and I let him have all the money I had;' did you swear to that? A.   Yes, sir.

"Q.   Was this question asked you, and was this answer made by you?   'He told you that he wanted you to help him out?   A.   He says, "I will get Turner for an indorser."   I says, "all right," and I handed it over?'   A.   Yes, sir; that is right.

"Q.   That is what occurred when the conversation was had between you and Mr. Lewis?   A.   That is it."

At the request of the plaintiff the court instructed the jury as follows:

"If the jury believe under the evidence that the note sued on was signed by B. W. Lewis, and that thereafter defendant, Turner T. Lewis, without any understanding or agreement with the plaintiff respecting the indorsement of said note by him, wrote his name on the back thereof, and that thereafter the said note without any such understanding or agreement was delivered to plaintiff, they are instructed that defendant is a maker of said note, and not an accommodation indorser, and that it was not necessary for plaintiff to make demand for the payment of said note of said B. W. Lewis, or to protest the same for non-payment, and give said Turner T. Lewis notice thereof; and if the jury find

under the instruction heretofore given that said Turner T. Lewis was a maker of said note, and if they further believe under the evidence that plaintiff is the owner and holder of said note, and that on the first day of February, 1892, there was paid plaintiff on account of said note under authority of said B. W. Lewis, the sum of $25 and that plaintiff at the time of said payment credited or caused to be credited said payment upon said note, and if they further believe under the evidence that the full amount of said note together with interest thereon has not been paid plaintiff, they will find for the plaintiff.''

At the request of the defendant the court instructed the jury as follows:

''3.  If the jury believe from the evidence that there was an understanding between plaintiff and defendant, that defendant should be liable on said note as an indorser, then it devolves upon the plaintiff to show that said note was presented to the maker at maturity for payment, and notice given defendant of its non-payment, and in the absence of such proof your verdict must be for the defendant.

''4.  You are instructed that before plaintiff is entitled to recover in the action he must show that B. W. Lewis made some payment on the note in question within ten years next prior to the bringing of this suit, which would be within ten years next prior to the 15th day of September, 1899, and unless he shows that B. W. Lewis did make such payment, your verdict must be for defendant.''

The court thereupon of its own motion gave the following instruction:

''1.  The mere indorsement of credit on the note is not sufficient but it must be shown that the money was actually paid plaintiff by authority of Ben W. Lewis.''

And thereupon Mr. Eleneious Smith, counsel for plaintiff, in his closing argument to the jury, used the following language:  ''That there could have been no

agreement between the plaintiff and defendant, because the defendant, Mr. Lewis, himself, admits that he had no conversation with Capt. Herndon, the plaintiff, about it.''

To which argument the defendant excepted and at the close of the argument requested the court to give the following instruction:

''5.    If the jury believe from the evidence that it was understood by plaintiff and defendant that defendant should be liable on said note as an indorser, then your verdict will be for the defendant.''

Which instruction the court refused to give.

The jury returned a verdict for the plaintiff for $21,031.82. The defendant filed a motion for a new trial, assigning as ground therefor, *inter alia,* that the verdict is against the evidence, the weight of the evidence, and against the law under the evidence. The plaintiff entered a voluntary remittitur of $1,991.94, the court sustained the motion for a new trial on the ground that the verdict was against the weight of the evidence, and the plaintiff appealed.

## I.

The case was put to the jury upon two propositions, first, that the note was barred by limitation unless B. W. Lewis authorized plaintiff's son to make an actual payment of twenty-five dollars on the note on February 1, 1892, and that the mere indorsement of a credit on the note was not sufficient; and second, that if it was agreed that Turner T. Lewis should be liable only as an indorser, then it was necessary for the plaintiff to show demand on B. W. Lewis, refusal to pay by him, and notice to Turner T. Lewis.

The testimony of Herndon, the son, is that B. W. Lewis authorized him to make a *payment* of twenty-five dollars on the note. The testimony of B. W. Lewis is that he authorized Herndon, the son, to make a *credit* of twenty-five dollars on the note. The court of its

own motion instructed the jury that "the mere indorsement of credit on the note is not sufficient, but it must be shown that the money was actually paid by authority of Ben W. Lewis." There was a conflict in the testimony, whether B. W. Lewis authorized a payment on the note or only a credit on the note. The jury evidently believed the testimony of Herndon, and the court manifestly believed the testimony of B. W. Lewis.

This was the first trial of the case. The trial court has a discretion to grant one new trial on the ground that it believes the verdict is against the weight of the evidence, and if there is any substantial evidence upon which such a belief could be founded, this court will not interfere with the action of the trial court in such a case. [Haven v. Railroad, 155 Mo. 216.]

One who writes his name on the back of a promissory note of which he is not the payee, is prima facie a joint maker, but as between such person and the payee parol evidence is admissible to prove the character and extent of the undertaking and obligation, whether as joint maker, indorser, surety or guarantor. [Kingman v. Mach. & Buggy Co., 150 Mo. l. c. 302.]

Of course, if the payee elects to treat such person as an indorser he can not afterwards change front and hold him as a joint maker. There was evidence in this case that would justify the court in believing that the plaintiff had treated the defendant as an indorser and not as a joint maker. On the other hand there were facts and circumstances and evidence in the case which would justify the jury in finding that the plaintiff had treated the defendant as a joint maker.

It can not be ascertained with respect to which of these two propositions the court disagreed with the jury, or whether he thought the verdict was against the evidence on both. Under such conditions this court will not disturb the action of the trial court in granting a new trial. The judgment of the circuit court is affirmed. All concur, except *Robinson, J.,* absent.