GARWOOD, APPELLANT, *v.* CORBETT ET AL., RESPONDENTS.

(No. 2,619.)

(Submitted February 16, 1909.  Decided February 19, 1909.)

[99 Pac. 958.]

*New Trial—Conflicting and Insufficient Evidence—Excessive Verdict—Duty of Court.*

New Trial—Conflicting Evidence.
  1.  Where the evidence is conflicting, a motion for a new trial on the ground of insufficiency of the evidence to sustain the verdict is addressed to the sound legal discretion of the trial court.
Same—Insufficiency of Evidence—Duty of Court.
  2.  If, on motion for a new trial, the court concludes that the verdict is not supported by the evidence, it is its duty to set it aside.
Same—Excessive Verdict—Remission of Excess.
  3.  Where the jury returned a verdict for plaintiff for more than double the amount he was entitled to recover under the most favorable aspect of his testimony—thus evincing bias and prejudice—the trial court properly granted it a new trial, and was not obliged to refuse a retrial in case plaintiff consented to a remission of the excess.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

ACTION by Joshua L. Garwood against Wallace Corbett and others. From an order granting defendants a new trial, plaintiff appeals. Affirmed.

*Messrs. Mackel & Meyer,* for Appellant.

*Mr. John N. Kirk, Mr. W. R. Kirk,* and *Mr. Geo. B. Dygert,* for Respondents.

MR. JUSTICE SMITH delivered the opinion of the court.

The complaint in this action alleges that in June, 1906, the defendants falsely represented to plaintiff that the Butte-Meaderville Copper Mining Company was a corporation and owned a large number of mining claims in the county of Silver Bow; that plaintiff believed such false representations, and, relying thereon, entered into an agreement with the defendants whereby he was to sell the stock of the corporation; that he was to be reimbursed for any moneys expended by him out of the proceeds of stock sold by him; that, in reliance upon the defendants' representations, he abandoned his position as stationary engineer in Butte, and went to South Bend, Indiana, for the purpose of selling stock, all at his own expense; that because of the fact that the company was not incorporated, he was unable to sell any stock, and was unable to reimburse himself for moneys expended and salary lost, to his damage in the sum of $3,000.

The testimony showed that the incorporation of the so-called Butte-Meaderville Copper Mining Company was not completed; that its property consisted of quartz locations and options, which the promoters contemplated transferring to the company in case it was eventually incorporated. The plaintiff testified that he went to South Bend and attempted to sell stock; that he interested certain prospective purchasers in the matter, and he says: "They raised but one question, and that was the title. They were satisfied with everything with reference to the company, except the title of the property. * * * They were satisfied to take stock, provided the title to the property was correct. They decided on Dr. S. L. Kilmer to come to Butte to examine the title. * * * I stayed there about two months,

and I first had intimation that the company was not incorporated, or that the title was not good about one month after I went back there, and, when I had information that this title was bad. they wanted to know what was the matter that I did not send their man back here. I was paying his expenses to come back here to investigate; and I left because I could not do any business, because they would not talk to me, because they thought I did not have anything, I guess. They thought I was a fake, I guess, toward the last, and I arrived here about the 8th or 9th of August, 1906."

The plaintiff introduced in evidence a contract dated June 9, 1906, authorizing him to sell 50,000 shares of the capital stock of the Butte-Meaderville Copper Mining Company under the following conditions, to-wit: 5,000 shares to be sold on or before July 4, 1906, and the balance on or before August 9, 1906, each of said shares to net the company $2.50. It appears that on July 11, 1906, another contract was sent him, wherein he was authorized to sell not to exceed 100,000 shares of the capital stock at the price of $1 per share. When he returned to Butte, he gave as a reason for not selling stock "that the second contract was sent to me cutting the price down and they did not want it at all, and, after I received that second contract and showed it, they did not want to talk to me." He also testified: "When I got back here, I gave you [Mr. Dygert] the reasons that you cut the prices on that, and that for that reason I could not do anything with it. I had a conversation with Mr. Tallant when I got back, in which I stated the reason why I had not sold the stock. I said I could not do anything with that stock, and also I said I had information that you had no title. * * * I first found out that the company had no title to this ground about a month after I had been there. I found out there was something crooked. I did not know that the company did not have title to the ground. I just got the information, and I took means to find out from the defendants, and I telegraphed to Mr. MacDonald to investigate, and I may have written to Mr. Tallant, but I won't say. I wrote to somebody other than the

defendants in this case. I first ascertained that this company was not incorporated six months after I returned from the east. I first had intimation that the title was not all right about a month after I had been east.'' The plaintiff was unable to sell any stock. His testimony was to the effect that he did not know before he went to South Bend that the company had not been incorporated, and did not know the condition of the titles; but several of the defendants testified that he knew all about the status of the so-called corporation, and was thoroughly conversant with the nature of the property that was to be transferred to the company. Two of the defendants testified that, when plaintiff returned to Butte, he stated that the reason he had failed to sell stock in South Bend was that there was not enough development work done on the ground; and Mr. Dygert testified that the plaintiff told him that the reason he had not sold any stock was that it was impossible to do anything with undeveloped property. Plaintiff's testimony also showed that his total expense in connection with the enterprise, including loss of time, amounted to $757. The jury returned a verdict in his favor for the sum of $1,500. A motion for a new trial was made, the grounds thereof being (1) excessive damages, appearing to have been given under the influence of passion or prejudice; (2) insufficiency of the evidence to justify the verdict, and that the verdict is against law. The district court of Silver Bow county granted the motion, and the plaintiff appeals from the order.

It will be recalled that the reason assigned in the complaint why the plaintiff was not able to sell stock was that the company had not been incorporated. His own testimony showed that he did not learn of this fact until long after he returned to Butte, and there is no evidence indicating that the prospective purchasers of the stock in South Bend ever had any knowledge on the subject; so that it is difficult to conceive how the plaintiff could have been entitled to a verdict in any event. However, the testimony was conflicting as to whether he knew before he entered upon the project that the company was not incorporated and the condition of the titles. Where the evidence

is conflicting, a motion for a new trial upon the ground of the insufficiency of the evidence to sustain a verdict is addressed to the sound legal discretion of the trial court. (*Stephens* v. *Elliott,* 36 Mont. 92, 92 Pac. 45.) If that court came to the conclusion that the verdict was not supported by the evidence— that is, that the evidence preponderated against the verdict— then it was the duty of the court to set it aside. (*Harrington* v. *Butte & Boston Min. Co.,* 27 Mont. 1, 69 Pac. 102; *Patten* v. *Hyde,* 23 Mont. 23, 57 Pac. 407; *White* v. *Barling,* 36 Mont. 413, 93 Pac. 348.)

It will also be observed that the verdict returned was about double what the plaintiff was entitled to, giving his testimony the most favorable consideration. It is suggested by counsel for the appellant that the trial court should have required plaintiff to remit the excess, and that this court has the power to do that also. It was said in *Helena & Livingston S. & R. Co.* v. *Lynch,* 25 Mont. 497, 65 Pac. 919: "Courts are reluctant to interfere with the verdict of a jury, and will not do so, on the ground of excessive damages given under the influence of passion and prejudice, unless it is apparent that their feelings of passion and prejudice have entered into and influenced their decision. Where it is apparent that this is the case, a new trial should be granted, unless it is also apparent that the verdict is otherwise correct, and the ends of justice will be fully served by requiring the successful party to remit the excess. In the latter case, however, it should clearly appear that upon the facts the successful party is clearly and as a matter of law entitled to a verdict in some amount, and that the prejudice and passion of the jury have gone no further than to lead them to swell the amount of damages; otherwise, all their deliberations must be deemed to have been permeated by their feelings, and the decision as a whole the result of passion, rather than of their calm, deliberate judgment." (See, also, *Lewis* v. *Northern Pac. Ry. Co.,* 36 Mont. 207, 92 Pac. 469.)

In view of all of the foregoing, we see no reason for thinking that the trial court abused its discretion in granting the defendants a new trial, and the order is therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.