[No. 10428. Department One. December 13, 1913.]

EDWARD JOHNSON, *Respondent*, v. S. P. DOMER, *Appellant.*[1]

APPEAL—REVIEW—DENIAL OF NEW TRIAL—ABUSE OF DISCRETION.
On motion for a new trial for insufficiency of the evidence to sustain the verdict, it is the duty of the trial judge to determine whether the evidence is sufficient or insufficient; and it is an abuse of discretion to refuse the new trial, when the evidence is insufficient, and when satisfied of that fact.

FRAUD—SALE OF STOCK — ACTIONS — EVIDENCE OF FRAUD—SUFFICIENCY. The evidence is insufficient to support a verdict for the plaintiff, for fraudulent representations alleged to have been made by the defendant on the sale of stock, where the evidence that the defendant sold the stock, as claimed by plaintiff and his wife, was uncertain, contradictory, and entitled to little weight, and was contradicted by three witnesses and in conflict with undisputed facts and circumstances, and it appears that plaintiff and his wife had never seen defendant before, nor afterwards for nearly three years, and must have been mistaken in their identification.

EVIDENCE—HEARSAY. In an action for fraud in the sale of stock, upon an issue as to the identification of the defendant as to whether he was the man who made the representations, evidence that the plaintiff was advised by a fortune teller to purchase the stock and to see the defendant about it, is inadmissible as hearsay, where defendant had no acquaintance with the fortune teller and had never seen him.

Appeal from a judgment of the superior court for Spokane county, Hinkle, J., entered December 4, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*S. P. Domer* (*B. C. Mosby* and *Harris·Baldwin*, of counsel), for appellant.

*George M. Nethercutt*, for respondent.

CROW, C. J.—Action by Edward Johnson against Anchor Oil Company, a corporation, S. P. Domer and Amelia E. Domer, his wife, to recover $825 alleged to have been paid to S. P. Domer for stock of the defendant corporation.

[1]Reported in 136 Pac. 1169.

The complaint alleged that on or about July 2, 1907, the defendant S. P. Domer represented to the plaintiff that the stock of the defendant company was then worth fifteen cents per share; that it would, in less than six months, be worth one dollar per share; that the company was then producing and shipping oil from its wells in Virginia at the rate of one hundred and fifty barrels a day; that the shipments would increase with further development; and that dividends would be paid within one year. Plaintiff further alleged that he was unable to read or write; that he relied upon defendant's representations; that he paid S. P. Domer $825 for 5,500 shares of stock; that the money thus paid was used by, and enured to the benefit of the community consisting of S. P. Domer and wife; that all of the alleged representations were false and fraudulent; and that plaintiff had tendered a return of the stock and demanded a return of the purchase money.

Defendants denied that S. P. Domer ever made any representations to plaintiff; that he ever sold plaintiff any stock; or that he had received any purchase money therefor. Two jury trials were had. On the first trial, the court dismissed the action as to defendants Anchor Oil Company and Amelia E. Domer, but submitted the case to the jury as to defendant S. P. Domer, against whom a verdict was returned. This verdict was set aside for insufficiency of evidence, and a new trial was granted to S. P. Domer, but the order of dismissal as to the defendants, Anchor Oil Company and Amelia E. Domer, was not disturbed. On the second trial, a verdict was returned in plaintiff's favor for $825 upon which a judgment was entered, and from which the defendant S. P. Domer has appealed. Plaintiff's death, which occurred subsequent to the appeal, has been suggested and his administrator has been substituted as respondent.

On July 2, 1907, F. E. Snodgrass and A. F. Richardson, two government employees, had offices in the Symons Block in the city of Spokane, where, as a side issue, they sold An-

chor Oil Company stock; Snodgrass being secretary and treasurer of the company, in which Richardson was also interested. On that date, and for more than fifteen years prior thereto, S. P. Domer was, and had been, a practicing attorney, with offices in another building. He at no time officed in the Symons Block, and was seldom there, although he was vice president of the defendant company. Plaintiff testified that he went to the offices shown to be those of Snodgrass and Richardson, where he met Domer, who then made the false and fraudulent statements relative to the stock; that in the course of a few days, accompanied by his wife, he returned to the same offices with $825; that he again talked with appellant, who repeated his representations to plaintiff's wife; that plaintiff paid his money to appellant, who then made out and delivered the certificate, and received the money; $25 in cash and $800 in check. The cancelled check was not produced on the trial. Plaintiff and wife both testified they never saw or knew Domer prior to this transaction, nor did they see him for nearly three years thereafter.

Appellant denied that he sold the stock, or that he ever saw or knew plaintiff or his wife prior to this controversy, which arose nearly three years after the alleged purchase of the stock when plaintiff made his charge of fraud. He further testified that he never sold any stock in the Symons Block or any where else, but that he had signed certificates in blank which he left with Snodgrass and Richardson to be issued when sold. The stock book, which is in evidence, contains a number of blank certificates signed by him as vice president. A. F. Richardson testified that he himself, representing the company, sold the stock and received the purchase money, which he immediately paid to Mr. Snodgrass, treasurer of the company; that the stock was issued on a blank certificate previously signed by S. P. Domer as vice president; that Domer was not present; that the certificate was in Richardson's handwriting, except the signatures of S. P. Domer as vice president, and F. E. Snodgrass, as sec-

retary and treasurer; and that it was made out by Richardson in the presence of plaintiff and his wife. He further testified that appellant had never sold any stock from the office in the Symons Block. Mr. Snodgrass, who corroborated the testimony of Mr. Richardson, stated that at both visits made by plaintiff at the Symons Block, Mr. Richardson represented the company, no one being present other than Mr. Richardson and himself. Plaintiff's certificate, which is in evidence, although signed by appellant as vice president, is not otherwise in his handwriting.

In ruling on the motion for a new trial, the trial judge said:

"I will say frankly if this case had been tried before me, I would have said that the Johnsons might have honestly been mistaken in their identification of Domer, but that the three witnesses for the defense could not be mistaken and if their testimony was not true they committed perjury, and that is giving proper credence to all the evidence. This case was formerly tried before a jury in Judge Webster's department of this court. At that trial the jury gave the plaintiff a verdict. Judge Webster granted a new trial. Upon a trial of the case subsequently in my department of the court a jury again awarded a verdict to the plaintiff. A motion is now made for a new trial for the reason, among other things, the evidence does not sustain the verdict. There is nothing before me that would leave me to believe that if a new trial was granted the same result would not follow in the future as in the past. There is nothing to indicate any newly discovered or additional evidence. Therefore, it appears to me it would be a waste of time and money to grant a new trial."

From this statement, it is manifest that the trial judge found the verdict of the jury to be against the weight of the evidence, and appellant contends that he abused his discretion and committed prejudicial error in denying the motion for a new trial. Respondent contends that the jury must determine all questions of fact, and that the verdict herein must be sustained. While it is true that the jury are exclusive judges of all questions of fact, yet, when the case comes

before the trial judge upon a motion for a new trial, it is his duty to determine whether the evidence is sufficient or insufficient to justify the verdict. In doing so he must be controlled by his own judgment. *Cranford v. O'Shea*, 75 Wash. 33, 134 Pac. 486; *Brown v. Walla Walla, ante* p. 670, 136 Pac. 1166.

Respondent cites and relies on *Money v. Seattle, Renton & Southern R. Co.*, 59 Wash. 120, 109 Pac. 307; *In re Renton*, 61 Wash. 330, 112 Pac. 348; and *Suell v. Jones*, 49 Wash. 582, 96 Pac. 4. In the *Money* case, the trial judge did not say that he believed the verdict was contrary to the evidence; as in the case at bar. In the *Renton* case, the trial judge went no further than to say that he differed with some of the witnesses. In the *Suell* case, the court stated that if he felt at all certain that the verdict was unjust he would set it aside, but that he had no such conviction. Here the trial judge distinctly stated that he believed plaintiff had not sustained his case by the evidence, and that the plaintiff and his wife were mistaken as to the identity of the person from whom the stock was purchased. Although it is not within the province of this court to pass upon the weight and sufficiency of conflicting evidence offered in a jury trial, yet we are constrained to say that, after reading the entire record, we are convinced the trial judge was right when he found the verdict was not supported by the evidence, and that justice had not been done.

There were two distinct issues, (1) whether any fraud was perpetrated upon plaintiff, and (2) whether appellant sold the stock. The evidence without dispute shows that plaintiff and his wife were old, illiterate, and ignorant. Plaintiff admitted that he had seen the appellant Domer in the Symons Block but twice, the first time being a few days before he paid for the stock, and the second when he made the payment. He testified that never before had he seen Domer; that he did not see him afterwards for about three years, when he again met him for a few minutes shortly before the commencement of this action; and that he then made his first

claim of fraud. Plaintiff's wife testified that she first met Domer in the Symons Block when plaintiff paid for the stock, and never saw him again until the first trial of this action. Neither the plaintiff nor his wife claimed any previous acquaintance with Domer. It is undisputed that Domer had no office in the Symons Block; that he was seldom there, perhaps not oftener than once a month, and then for only a few minutes at a time. Richardson and Snodgrass, neither of whom is interested in the event of this action, testified that Richardson sold the stock to plaintiff; that Domer was not present; that he never sold any stock; and had nothing to do with the transaction. Appellant testified that he sold no stock to any one, and that he never saw respondent until about one week before the institution of this action. Stubs for more than eighty certificates of stock which had been sold by the defendant company are in evidence, but not one is in appellant's handwriting, while many of them are in Richardson's handwriting. There is no evidence that appellant ever received any financial benefit from the sale. On the contrary, Richardson and Snodgrass both testified that plaintiff's money was paid into the treasury of the defendant corporation, and with the proceeds of other sales of treasury stock, was used in drilling a well for oil. As a condition precedent to plaintiff's right of recovery, it was necessary for him to show by a preponderance of the evidence that Domer was the identical party who sold him the stock. If he failed in this, he could not recover, even though fraudulent representations upon which he relied were made by the party who did sell the stock. The evidence tending to show that Domer made the sale was, to say the least, flimsy, uncertain, contradictory and entitled to but little, if any, weight. It was contradicted by, and was in conflict with undisputed facts and circumstances of the case, to say nothing of the positive oral testimony of Richardson, Snodgrass and appellant.

Over appellant's objection, plaintiff was permitted to testify that he had been directed to appellant by one St. Charles,

a fortune teller, who had influenced him to purchase the stock; had advised him to do so; and that he went to see Domer for that reason.    Plaintiff's counsel endeavored to show all conversations between him and St. Charles, but, upon appellant's objection, was, to some extent, prevented from so doing; yet plaintiff's counsel continually and repeatedly endeavored to introduce this evidence, and as a consequence was permitted to show the advice given to plaintiff by St. Charles as above mentioned.    There was no competent evidence that any previous conversation had occurred; that any previous acquaintance or understanding had existed, between St. Charles and appellant; or that appellant had ever seen St. Charles.    In fact, the only evidence on that point shows that Domer never knew him.    To show the substance of any conversation between St. Charles and plaintiff, wherein plaintiff was advised to purchase the stock as an investment, and to see Domer relative thereto, was admitting prejudicial hearsay evidence, which had a direct tendency to impress the jury with the idea that some previous understanding relative to promoting sales of the stock must have existed between appellant and St. Charles, a fact not shown.    If it was true, that plaintiff had been directed to see Domer, these questions naturally arise: Why did plaintiff not call at Domer's office where he had done business for many years, and where he could be found most readily?    Is it probable that, on each occasion when he happened into the office in the Symons Block, he would find appellant in charge, selling stock, collecting money and transacting business for the corporation?    The entire record is convincing to the effect that plaintiff and his wife were mistaken when they stated that Domer was the vendor.    They doubtless conceived the idea that he was the man who made the sale because his name was subscribed to their certificate.

On the record before us, we conclude that the trial judge abused his discretion and committed prejudicial error in overruling the motion for a new trial.

The judgment is reversed, and the cause remanded with instructions to grant a new trial.

Mount and Gose, JJ., concur.

Chadwick, J. (concurring)—It is my opinion that this case does not fall within the rule of *Cranford v. O'Shea*, 75 Wash. 33, 134 Pac. 486, or any of the cases cited therein. In that case, the judge did not exercise the judicial discretion which the law had put upon him. He misconceived the extent of his power. Here the judge did exercise his discretion. He went no further than did the court in the case of *Kincaid v. Walla Walla Valley Traction Co.*, 57 Wash. 334, 106 Pac. 918, 135 Am. St. 982. He says the evidence is conflicting and that he would not have found as the jury did. The cases pertaining to this subject are collected and differentiated in *Brown v. Walla Walla, ante* p. 670, 136 Pac. 1166.

If the trial judge in this instance had said no more than "the motion for a new trial is· denied," the question discussed in the majority opinion would not have occurred. I do not understand that we have ever intended to go so far as to penalize the winner of a verdict because the trial judge disagreed with it; or, upon the same state of facts would have rendered a different verdict; or, where he talked too much or too little; or, apologized for his decision when passing upon the motion for a new trial. If judges were denied the right of salving the wounds of unsuccessful litigants, the work of trial judges would be robbed of much of its charm. I have gone over the evidence, and am satisfied that the plaintiff and his wife were mistaken, and Mr. Domer was not the man who sold them the mining stock, but that question in my judgment was for the jury.

The testimony with reference to the fortune teller was improperly admitted and calls for a reversal in any event. I disbelieve it in its entirety. It does not ring true. The trial judge disagreed with the jury as to the weight of the evidence. The positive testimony of the defendant and all of

the associated facts that were not susceptible of denial or disproof, when measured with the testimony of the respondents, makes it very improbable that a just verdict was rendered. There was ample ground for the exercise of the judge's discretion, and had he granted a new trial, this court would have undoubtedly sustained him.

I concur in the result.