Andy Bollin, Petitioner, v. Galesburg Horse and Mule Company, Respondent.

Gen. No. 8,785.

Opinion filed July 6, 1934.

LEO P. BAIRD and JAMES D. BAIRD, for petitioner.

BURREL BARASH, for respondent; LOUIS GARD, of counsel.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

In this case the plaintiff was granted, during vacation by one of the judges of this court, leave to appeal from an order of the trial judge granting the defendant's motion for a new trial. The case is now submitted on the petition for leave to appeal and the answer thereto together with the briefs of the parties filed with the petition and the answer. A transcript of the record, including a stenographic copy of the evidence, has been filed in this court, and the question presented is whether the trial judge erred in granting the defendant a new trial.

On January 24, 1930, the plaintiff brought an action of assumpsit against the defendant and he filed the common counts only. The defendant filed the general issue. The order of the trial judge granting a new trial was entered on January 3, 1934. It is the contention of the plaintiff that the defendant is liable in damages to the plaintiff under the count for money had and received by the defendant to and for the use of the plaintiff. The action was brought against the defendant, a corporation, and C. G. Beckley, but before the issues were joined the plaintiff dismissed as to Beckley. A jury trial resulted in a verdict for the plaintiff for $1,500. The transaction which is the basis of the plaintiff's claim took place in 1926. At that time, it is conceded Beckley was a director of the defendant company. The defendant was engaged in the business of selling horses for commission and it held weekly sales at auction. The plaintiff and Beckley are the only witnesses who testified as to the material facts in issue. The reasons of the trial judge for

granting the new trial are stated in the record. If the defendant is entitled to a new trial for any reason stated by the trial judge, the order of the trial judge must be affirmed.

The plaintiff, a farmer living near the Town of Niota which is about 75 miles from Galesburg where the defendant had its place of business, testified that in the month of April, 1926, he called the defendant over the telephone and that he had a conversation with Beckley. The plaintiff and Beckley for some years before that time had been buying and selling horses. The plaintiff's purpose in calling Beckley was to inform him that a team of horses which he had received from Beckley was not satisfactory and that he wanted a bigger team. The team of horses mentioned in this conversation over the telephone is not involved in this action.

Confining our attention to the testimony of the plaintiff, it appears from the record as follows: In the telephone conversation, Beckley requested the plaintiff to pasture a carload of horses for 10 days for $100. On May 27, 1926, Beckley arrived in Niota with a carload of horses and he informed the plaintiff that the horses were in the stockyards at Niota. The plaintiff went to the stockyards and picked out a grey team in place of the team which had proved unsatisfactory to him. At the stockyards the plaintiff and Beckley made arrangements whereby the plaintiff was to pasture the horses for 10 days for $100 and that Beckley was to get the horses at the end of the 10 days. After the horses had been driven about two blocks from the yards, Beckley told the plaintiff that he had drawn on him for the price of the horses. The plaintiff replied to this statement of Beckley, ''It is a hell of a way of doing.'' Beckley replied that the Galesburg Horse and Mule Company (the defendant) was short of money; that the company would take the horses

back in 10 days and that the plaintiff would get the $100 for pasturing the horses.

On the day the horses arrived in Niota, Beckley handed to the plaintiff a statement of account which is headed, ''Galesburg, Illinois, May 27, 1926, Andy Bolin, Nauvoo, Illinois, in account with Galesburg Horse and Mule Company.'' The items on this statement purport to show the number of horses shipped, the sex of the horse, the prices thereof, the expenses of bedding the car and the freight due. The statement shows·a total of $2,562.10. This was the amount of the sight draft drawn by Beckley on the plaintiff. The draft was drawn in favor of the defendant and it secured the collection of the draft through its bank in Galesburg. The amount needed to pay the draft had been placed in a bank at Nauvoo by the plaintiff on June 1, 1926, which was a few days after the horses arrived at Niota.

It also appears from the evidence that the horses were taken from the stockyards by the plaintiff and Beckley and that they were placed in the pasture of the plaintiff where they remained until August 23, 1926. On that date Beckley came and got the horses and shipped them to Galesburg. One of the horses had died while in the pasture and a team was substituted for the team which the plaintiff had asked to return because unsatisfactory to him.

It further appears from the plaintiff's testimony that after he had kept possession of the horses for 10 days he had a conversation over the telephone with Beckley and told him that the 10 days were up and that he should come and get the horses. Beckley replied by stating that the market was unfavorable and asked the plaintiff to keep the horses a few days longer. About two weeks after this conversation, the plaintiff again called Beckley on the telephone and he promised to come and look at the horses. Beckley came to the

farm of the plaintiff and looked at the horses. At that time some of the horses were sick with sore throats and some of them had the distemper. After looking at the horses and telling the plaintiff to get a doctor to treat the horses, Beckley left. The plaintiff called Beckley several times before the horses were taken away by Beckley on August 23, 1926.

It also appears from the evidence that on the day the horses were taken away by Beckley he gave to the plaintiff a piece of paper on which Beckley had written figures and notes. This paper was prepared by Beckley evidently to show a balance struck of the accounts between the plaintiff and Beckley. In this statement the plaintiff was charged for the price of the 17 horses, including handling and freight, the sum of $2,569.60; plaintiff was also charged for and received credit for horses not herein involved. He was allowed a credit of $25 to pay the doctor for treating the sick horses. The statement contained a charge against Beckley of $275 for pasture and feed for the horses for the time the horses were in the possession of the plaintiff. The statement had the following notation on the back: "Draft for $1,600 through First National Bank, Galesburg Horse and Mule Company." The amount of $1,600 was deducted from the charges against the plaintiff, leaving a balance due from Beckley to the plaintiff, according to the statement, the full amount of $2,825.10. The amount of the draft, $1,600, was deducted from this balance, leaving Beckley owing the plaintiff $1,225.10.

The plaintiff testified: "At the time this statement was given to me by Mr. Beckley, Mr. Beckley said he owed me the full amount. He said, 'don't draw on me for over $1600.' He instructed me about the sight draft of $1600, he said, 'don't draw over that, in a few days the Horse and Mule Company will send the money right back to you.' He instructed me to draw

on the Horse and Mule Company of Galesburg, Illinois, the defendant in this case. The item of $1600 I testified about Mr. Beckley told me to draw on the Galesburg Horse and Mule Company for, and I said, 'why not all of it,' and he said, 'I will pay it back to you in a few days, as soon as the horses are sold.' ''

The record shows that after the horses were returned to Galesburg, Beckley left his demand note at the First Trust and Savings Bank at Nauvoo, dated August 30, 1926, payable to the order of the plaintiff for $950. Thereafter, a payment of $100 was made by Beckley to the plaintiff. Two payments of interest on the note were made to the plaintiff while the note was in the bank. This note has not been paid by Beckley. The plaintiff testified that the note was given in reference to the shipment of the horses. No demand was made by the plaintiff on the defendant before the suit was brought.

Beckley testified as follows: That the defendant company was engaged in the business of selling horses on commission and that it did not handle its own horses; that he was engaged in the business of buying and selling horses for himself; that he had an account with the defendant; that he was acting in the transaction now in question with the plaintiff on his own behalf; that the defendant or any of its officers, did not authorize him to sell horses to the plaintiff; that the horses which he shipped to the plaintiff on May 26, 1926, he had bought for the plaintiff; that on a night before an auction of horses held by the defendant, he called the plaintiff on the telephone and told him that he could buy a load of horses worth the money and that the plaintiff said if Beckley thought he could buy them to do so and ship the horses to him; that he bought the 17 horses at an auction held by the defendant and shipped them to the plaintiff; that the horses were not the property of the defendant; that he (Beck-

ley) owed the defendant for the horses and that the money from the draft drawn on the plaintiff was received by the defendant in payment of the horses as he did not pay for them at the auction and they had been charged to his account. He denied he had a conversation with the plaintiff about pasturing the horses.

Beckley further testified that about two weeks after the transaction about the horses, he had a conversation with the plaintiff and that the plaintiff stated that he wanted to sell the horses back to him; that he looked at the horses and offered to buy such of them which were not sick; that about two weeks later the plaintiff called him and told him that the horses were getting sick; that he then went to the pasture of the plaintiff and told him to take care of the horses and he would buy them back as soon as they were well again; that he bought 10 of the horses from the plaintiff; that he paid the draft for $1,600 out of his own funds; that he also paid the plaintiff $250 which was his own money; and that he gave to him his note for $950; that the draft he drew on the plaintiff to the defendant, went to pay for the 17 horses he bought of the defendant.

In rebuttal the plaintiff denied that he told Beckley to buy a carload of horses or that Beckley came to his place and offered to buy the horses from him; that Beckley did not buy 10 horses from him; that he never knew that Beckley had left the $950 note at the bank until some time after it was left there, and that he never asked him to leave the note at the bank.

Among the reasons stated in the record why the trial judge granted the motion for a new trial are the following: The plaintiff in this case did not show a right to recover against the Galesburg Horse and Mule Company by a preponderance of the evidence. The court should have instructed the jury at the close of plaintiff's case to find for the defendant. Where the trial judge grants the defendant a new trial on the

ground that the plaintiff has not proved his case by the weight or preponderance of the evidence, and the plaintiff and the defendant are the only witnesses testifying to the material facts on the issues in the case, and their testimony is in conflict on or about such facts, this court will not reverse the order granting a new trial unless it clearly appears from the evidence in the case that the trial judge has manifestly abused his discretion in setting aside the verdict and granting the new trial. We find no physical facts in the evidence contradicting the testimony of either the plaintiff or the defendant. We do not find anything in the evidence, or in the record, justifying this court in overriding the discretion of the trial judge granting the defendant a new trial. The trial judge, having seen the witnesses and having heard them testify, is in a far better position to judge the weight of their testimony than this court. (*Bean v. Coffee,* 169 Ark. 1052, 277 S. W. 522; *Johnson v. Domer,* 76 Wash. 677, 136 Pac. 1169; *McWilliams v. Missouri Pacific Ry. Co.,* 172 Mo. App. 318, 157 S. W. 1001; *Bilsky v. Braley,* 246 Mass. 480, 141 N. E. 284; *Garwood v. Corbett,* 38 Mont. 364, 99 Pac. 958; *Bauer v. Montague Mailing Machine Co.,* 148 N. Y. S. 990; *Young v. Thornley,* — R. I. —, 166 Atl. 690.)

It is no answer to the position we have taken as announced above to urge that the action of assumpsit reliance being placed on the common count for money had and received by the defendant, to and for the use of the plaintiff, is in its nature an equitable suit or proceeding; that therefore the plaintiff need not prove privity between the defendant and the one from whom he received the money, thus obviating proof that Beckley was the agent of the defendant. If it be granted that in this case the plaintiff did not have to prove that Beckley was acting as the agent of the defendant, still there must be proof in the evidence from which the trial judge could say that he is convinced by the

evidence, accepting the testimony of the plaintiff as being true and giving him the benefit of all legitimate inferences which might be reasonably drawn from the evidence, that the defendant has received or retains money under such circumstances, and which in fact, in justice and good conscience he should pay over to the plaintiff. This the evidence in this case does not show. In our opinion the trial judge would have been (fully) justified in directing a verdict for the defendant at the close of all of the evidence in the case. Under this situation the order granting a new trial must be affirmed.

The order of the circuit court of Knox county in granting a new trial is hereby affirmed, and the cause is hereby remanded to said court for a new trial.

*Affirmed.*