## DAVID T. McWILLIAMS, Appellant, v. MISSOURI PACIFIC RY. CO., Respondent.

**Kansas City Court of Appeals, June 2, 1913.**

1. **RAILROADS: Public Crossing.** At the point where a railroad crossed a public street in a city there were boards from twelve to twenty feet long between the rails which made a crossing over the rough ties and rails, and the usual sign stood near bearing the words "Railroad Crossing. Look out for the cars." The place was used as a crossing to a more or less extent in the daytime, but not much at night: *Held*, that it was a public crossing and, therefore, it was the duty of the railroad to maintain a lookout at all times when passing over it whether in daytime or at night.

2. **TRIAL: Setting Verdict Aside: Reason Given for so Doing.** If the reason given by a trial court for setting aside a verdict is because the court is of the opinion that, as a matter of law, defendant owed no duty to be on the watchout for plaintiff then the action of the trial court is reviewable, and the appellate court will reverse the trial court's action and reinstate the verdict if the trial court is wrong in its view of the law. But if the verdict was set aside because it was against the evidence as to one of the basic and elemental necessary facts which must exist in order to give plaintiff a right of recovery, then the granting of the new trial was within the discretion of the trial court, and its action will not be disturbed if there is anything at all in the evidence tending to support the view of the trial court.

3. **TORT: Damages: Humanitarian Doctrine: Ground of Recovery.** Where the injury occurred in the dark, and there was no evidence that any of the trainmen saw plaintiff, then the only ground upon which plaintiff can recover is that he was at a public crossing or place where by law the defendant was required to see him. And a declaration by the trial court that the verdict is against the evidence as to plaintiff being at such place is, in effect, under such circumstances, a declaration that the verdict is against the evidence.

4. ———: ———: **Pleading: Admission in Answer.** Even though an answer admits that the injury occurred in or near the locality mentioned in the petition, yet where plaintiff's right to recover depends upon his being at a particular point in that locality, and there is no express admission that plaintiff was in that particular spot when struck, but a denial

of each and every other allegation in the petition contained, and the trial court and the parties treated the answer as containing no such admission, the appellate court will not, under such circumstances, construe the pleading as containing such admission.

5. APPELLATE PRACTICE: Must Rely on Same Theory as to Facts on Rehearing as at Original Submission of Case. A party ought not to be allowed to base his contention on one state of facts at the original submission of the case, and then on rehearing change to an entirely different theory based on an assumed state of facts opposite to and contradictory of the facts assumed on the original hearing. But where, on the original hearing, both theories are relied on and presented so that either can be adopted according to whichever set of facts or proposition of law is found tenable, then the fact that greater stress was laid on one theory than the other at the original hearing, will not prevent the party relying on them from amplifying and laying greater stress on the other theory at the rehearing.

Appeal from Jackson Circuit Court.—*Hon. Jas. E. Goodrich,* Judge.

AFFIRMED.

*Henry J. Latshaw* for appellant.

The place where plaintiff was injured being a public street in Kansas City, Missouri, plaintiff was not a trespasser by being on defendant's tracks on said street and it was the duty of defendant's servants to be on the look out for pedestrians and vehicles thereon at the time plaintiff was injured, and it was not incumbent upon plaintiff to prove the fact that said street was in the habit of being used by the public at or about the hour plaintiff was injured. Riggs v. Railroad, 216 Mo. 318, 319; Lang v. Railroad, 115 Mo. App. 498; Scullin v. Railroad, 184 Mo. 695; Everett v. Railroad, 214 Mo. 89 and 92; Mitchell v. Railroad, 122 Mo. App. 50; Moore v. Railroad, 157 Mo. App. 53; Irving v. Railroad, 156 Mo. App. 667; Byars v. Railroad, 141 S. W. 926; Buckry-Ellis v. Railroad, 138 S. W. 912; Stotler v. Railroad, 200 Mo. 107.

*Martin L. Clardy* and *Edward J. White* for respondent.

(1)   There is nothing but the record proper before the court, as the plaintiff did not file his bill of exceptions in time to have the same considered in the trial court, the time to file the bill of exceptions having expired before the appeal was filed, as shown by the record.   Plaintiff was given until on or before the first day of September, 1911, to file his bill of exceptions and the bill of exceptions was not presented or signed until the 23rd day of January, 1912. State ex rel. v. Duncan, 130 Mo. App. 311; McKinney v. Lumber Co., 131 Mo. App. 425; State v. Cutberth, 203 Mo. 579; Hardware Co. v. Weeks, 135 Mo. App. 20; Doolittle v. Ward, 135 Mo. App. 616; State v. Taylor, 134 Mo. App. 430.   (2)   The reason assigned for the ruling of the court below is of no value on appeal, so long as the end reached is right and although the grounds assigned by the trial court for sustaining a motion for a new trial did not justify the order, yet if the record shows that there was error made in the course of the trial not so specified that did justify it, the action of the court in granting a new trial will be upheld on appeal. Chandlar v. Transit Co., 213 Mo. 244; Green v. Railway Assn., 211 Mo. 18; Taylor v. Railroad, 130 Mo. App. 582; Smart v. Kansas City, 208 Mo. 162; Fink v. McCue, 123 Mo. App. 313; Parker v. Britton, 133 Mo. App. 270; Bank v. Rogers, 123 Mo. App. 569; Hunt v. Street Railway, 126 Mo. App. 79.   (3)   The plaintiff having been struck in the defendant's private railroad yard and at a point where the track was not subject to user, and not having been discovered until the car struck him, the humanitarian doctrine does not apply to this case.   Dyrcz v. Railroad, 141 S. W. Rep. 865; Frye v. Railroad, 200 Mo. 377; White v. Railroad, 141 S. W. 436; McGee v. Railroad, 153 Mo. App. 492; Paul v. Railroad, 152 Mo. App. 577; Abbott v. Railroad,

121 Mo. App. 585; Mockowk v. Railroad, 196 Mo. 557; Green v. Railroad, 192 Mo. 131; Lamm v. Railroad, 216 Mo. 580; Schaub v. Railroad, 133 Mo. App. 444; Gunn v. Railroad, 141 Mo. App. 315; Ross v. Railroad, 113 Mo. App. 604. (4) The reason assigned by the trial court being that the verdict is against the evidence, this court will not review the discretion of the trial court in granting a new trial, as this is a matter within the sound discretion of the trial court, under the statute. Rodan v. Transit Co., 207 Mo. 392; Carnes v. Wynn, 126 Mo. App. 712; Fink v. McCue, 123 Mo. App. 313; Crow v. Crow, 124 Mo. App. 120.

TRIMBLE, J.—Suit to recover damages for injuries received on defendant's tracks "where or near where Gillis street is crossed by First street" in Kansas City, Missouri. At the point in question defendant has four tracks running east and west, two main tracks in the center and an outer switch track on each side of the main tracks. These are parallel to and about one hundred and fifty rods south of the Missouri river. Gillis street extends from the river bank south across defendant's tracks and on into the city. The city dump was on the river bank at the foot of Gillis street, and a building belonging to the gas company was located north of the railroad tracks and close to Gillis street and also a tar roofing plant. A fence had been built across Gillis street about eight feet north of and parallel to the north track, but a gate was in this fence through which went a wagon road. Gillis street was not paved, and had no sidewalks; nor were there any residences north of the track in that vicinity. On the tracks in Gillis street was a crossing made of planks about twelve feet, or possibly more, in length; and the usual sign stood there which read "Railroad crossing. Lookout for the cars." This crossing was used mostly by persons going to the dump at the foot

of the street, teams being driven across the tracks at this point hauling dirt and refuse, also possibly oil and pipe for the gas company. The crossing was but little used at night though there was testimony that occasionally some persons did go across there after dark.

The evening in question was dry and clear. Plaintiff claims that he was walking south on Gillis street and started across defendant's tracks when an eastbound freight train on the south main track was passing and impeded his progress. The engine and one or two cars had passed Gillis street when plaintiff reached the track. He looked east and west to see if any train was approaching on the north main track and, seeing none, he stepped upon the north main track waiting for the freight train to pass and let him continue on his way. Before it got by, however, one of defendant's switch engines backed up from the east over the north track pushing behind it a train of cars, the front or west one of which struck plaintiff. He testified that he was not aware of his peril until just as the car was on the point of striking him; that being unable to get out of the way he caught hold of the car (which was going four or five miles an hour) to save himself, and was dragged about fifty feet when his right foot caught in some way and his leg was run over and mangled just above the ankle and again crushed several inches above that, all of which necessitated amputation. His arm, shoulder and side were also bruised.

There was no headlight on the rear of the train as it backed west on this occasion, except that the switch foreman was on the north side of the rear car (which was a Union Tank Line oil car), and had in his hand an ordinary railroad lantern. No signal whatever was given of the movement of the train as it approached Gillis street. This switch foreman on the rear car testified that he did not see plaintiff and did

not know he had been struck until sometime afterward. The plaintiff testified that he saw this man so plainly by the light of an arc lamp hanging 100 feet south of the crossing as to be able to recognize him afterward.

The case went to the jury, under the second count of the petition, on the humanitarian theory, and the jury were told, by proper instructions, that, if defendant's agents had reason to expect people at said time and place and either saw or could have seen the plaintiff in peril and failed to exercise ordinary care to avoid striking him, then defendant was guilty of negligence and plaintiff was entitled to recover. The defense in its instructions submitted two theories, first, that plaintiff was not standing on the track when struck, but was endeavoring to climb on one of defendant's cars at its side in order to ride up town, and fell with his foot under the wheel, and, if so, he could not recover; second, that he was struck and injured at a point west of Gillis street (which would be at a place other than the crossing) and, if so, he could not recover.

The jury found for plaintiff and returned a verdict for $10,000, and judgment for that amount was rendered. In due time defendant filed a motion for new trial. Plaintiff thereupon entered a written remittitur of $2500 and all interest to date of remittitur and the court set aside the $10,000 judgment and, acting on the remittitur, rendered judgment for $7500 to bear interest from the date of the last judgment. The court then took up the motion for new trial and after a hearing thereon entered an order sustaining the same "for the reason that the verdict is against the evidence as to the plaintiff being at the time of his injury at the place where and when it was the duty of defendant's servants and agents to be on the lookout for him." From this order granting defendant a new trial, plaintiff appealed.

The cause was argued in this court and submitted and a decision rendered at the October term, 1912. A rehearing was granted, however, and the cause again set down for argument at the present term.

The trouble in reaching a satisfactory determination of this case on appeal grows out of the apparent difficulty in knowing precisely what the learned trial judge meant in the reason given for granting a new trial. Among the points raised by the defense, in addition to those hereinabove mentioned, was the contention that there was no public crossing at Gillis street, that the street having been fenced up immediately north of the track and, being within defendant's switch yards, and there being no user of the track at this point except in daytime, and the accident happening at night, the defendant was under no duty to be on the lookout for any one at that time and place. So that, when the trial judge gave the reason above shown as his ground for setting the verdict and judgment aside, it was possibly open to two interpretations, i. e., either that the verdict was against the evidence as to the point in Gillis street being a public crossing such as required defendant to keep a lookout when passing over it at night, or that the verdict was against the weight of the evidence as to plaintiff being on the crossing at the time he was struck. If the trial judge meant the former, then his action was erroneous, since the evidence clearly and indisputably showed that the alleged point in Gillis street was a public crossing. The fact that its greatest use was in the daytime by persons hauling dirt and going to and from the gas and roofing plants, and that it was seldom used at night, did not prevent it from being a public crossing. It was in a public street, where people had a right to go; there was in fact a crossing made of boards in the center of the street to enable persons and vehicles to pass over the rough ties and rails of the railway, and this was recognized by the railroad as a crossing by

its sign "Railroad crossing. Look out for the cars." As to this being a public crossing, the evidence is all one way, and, in our opinion, conclusively shows that the street was a public crossing and was so regarded by the defendant. Being a public crossing, the defendant must expect it to be used by night as well as by day, and must therefore keep a warning and lookout on its cars at all times when passing over it. In Lang v. Mo. Pac. Ry. Co., 115 Mo. App. 489, l. c. 498, it is said that: "The presence of a railroad crossing is, of itself, a danger signal, both to persons using the public highway and those operating trains upon the railroad. Each class of persons is bound to anticipate the presence of the other at the crossing at any time. Those operating trains must give warning of their approach and those using the highway must be alert in the use of their senses to guard their crossing from danger." And in Riggs v. Metropolitan Street Ry. Co., 216 Mo. 304, l. c. 318, our Supreme Court has expressed the same thought, as applied to street railways, when it said: "The sum of the right doctrine being that both a street railway company and the citizen on foot have a right to use the street, and neither having an exclusive right, it results that their relative rights and duties are regulated by the exercise of due care, and due care on the part of the street car company requires an outlook ahead to prevent injury to the citizen." So that, if plaintiff after having looked to see if a train was approaching on the north track, and seeing none, stepped on the north track at the crossing and, while waiting for the freight to pass in front of him on the south track, defendant backed another train in the opposite direction over the north track without headlight or lookout to warn persons on the crossing and prevent injury to them, and thereby struck plaintiff, when he could have been seen in time to stop the train before striking him had such lookout been careful, then the question of defendant's liability ought to be

submitted to the jury, and its decision thereon will not be disturbed. Hence, if the learned trial judge set the judgment aside because he thought this point in Gillis street was not *such a crossing* as would require defendant to be on the lookout for plaintiff, his action was erroneous and reviewable. We do not think this is the meaning of the words used by the trial judge in giving his reason for setting the verdict aside. The evidence as to such point being a public crossing was, as said before, all one way. There was no contrary or conflicting evidence on this point. Hence the statement of the court "that the verdict is against the evidence" cannot be considered as referring to this point. As the evidence was all one way and undisputed concerning the crossing, the question of the duty of the defendant to be on the lookout was purely one of law, and there was no occasion for the court to say anything about the weight of the evidence if he was of the opinion that the defendant owed no duty to keep a lookout when approaching the crossing.

What then was the trial court's meaning? He said the new trial is granted for the reason that "the verdict is against the evidence as to plaintiff *being at the place* where and when it was the duty of defendant's servants and agents to be on the lookout for him." Now, the *only place* where defendant had a duty to be on the lookout for him *was the crossing.* Hence, if the court thought the weight of the evidence showed that the plaintiff was *not at this place,* then this means that, in the opinion of the court, the plaintiff was not at the crossing. And this is strengthened when it is observed that the court uses the definite article "the" instead of the indefinite article "a." If the court had said the plaintiff was not at *a* place where the defendant must look out for him, it could be urged with reason that the court meant that the place where he said he was, was not a place where the defendant had to watch for him. But when the court

said the plaintiff was not at *the* place where the defendant is required to look out for him, this can only mean that the plaintiff was not at the crossing. If this is what the court meant, then, under the circumstances of this case, the reason given by the court is tantamount to saying that the verdict is against the weight of the evidence. Because there was no evidence that the trainmen saw him, and, if they did not see him, then the only ground upon which plaintiff could recover was that he was at a place where defendant was required by law to look out for and see him. And if the trial court is of the opinion that the verdict is against the weight of the evidence as to plaintiff being at such place, then this is a matter so entirely within the discretion of the trial court as to require us to leave his order undisturbed, unless it clearly appears that such discretion has been abused. As said in Kuenzel v. Stevens, 155 Mo. 280, l. c. 285: "There is no more important power for the promotion of justice than that intrusted to the trial court in the matter of granting a new trial. It is a power to be exercised with great care, and no one is so well informed as to how the discretion should be used as the trial judge. It is only when it very clearly appears that a wise discretion has not guided his action, that an appellate court should interfere." And in Iron Mountain Bank v. Armstrong, 92 Mo. 265, l. c. 279, it is said: "Whilst appellate courts may not, and will not, review the action of trial courts, in granting or refusing new trials when there is any evidence to support it, on the ground that the verdict is contrary to the weight of evidence, no such rule applies to the trial courts in that regard. On the contrary, it has been repeatedly held that the trial court may, and when it appears that the verdict is unsupported by the evidence, or the weight of evidence, or that injustice has been done, it is its duty to interfere, and set the same aside and grant a new trial on that account. It has also been further held, that

the granting or refusing of new trials, on the ground that the verdict is against the weight of evidence, rests peculiarly with the judge presiding at the trial, and that his discretion in this particular will rarely be interfered with, unless it plainly appears that injustice has been done, or that it has been unsoundly or arbitrarily exercised.''

Appellant contends that, as defendant offered no testimony, there is no evidence whatever to show or tend to show that plaintiff was not at the crossing when struck, and therefore, the action of the trial court in awarding a new trial, on the theory that he was elsewhere, was an abuse of discretion and is reviewable, citing Burk v. M. K. & T. Ry. Co., 144 S. W. 1123, l. c. 1125; Hopkins v. City of Springfield, 147 S. W. 1099, l. c. 1100.

But, even if no testimony was offered by defendant, if the facts shown are sufficient to cast doubt on plaintiff's story, or if there are enough inconsistencies in the testimony to raise a question as to plaintiff's being at the crossing, and the trial court is of the opinion that the weight of the evidence is against his being there when struck, this is sufficient to justify the court's discretion in granting a new trial. Especially is this true in this case since it is only plaintiff's unsupported word that tells how the injury occurred and that it took place on the crossing; and the trial court, having seen him and heard him testify, is in far better position to judge of the weight of his testimony than an appellate court. If, therefore, there is anything in the facts or testimony tending to throw doubt on plaintiff's statement that he was at the crossing, then the opinion of the trial court should be deferred to. Plaintiff testified that he was a stranger in Kansas City; that he had that day come from Leavenworth, and, in a restaurant on Fifth street, a man whom he did not know told him he could find work down on the river; that he went down Fifth street to

Gillis and then north to the river; that at some point between the railroad and the river he met an unknown man who told him there were sand pits down the river at which he could obtain work; that although it was then late in the evening he walked down the river for two miles looking for the sand pits until it grew dark; that thereupon he turned back. He was asked:

"Q. Where did you get on to Gillis street? A. I struck Gillis street *there at the railroad track.*

"Q. And when you got on to Gillis street, which direction did you go? A. When I got on Gillis street I walked down the wagon track *and then a little west —southwest.*

"Q. Now you may turn around and tell these gentlemen here of the jury just exactly how this accident happened to you, Mr. McWilliams, after you got up there to Gillis street and saw the railroad track? A. Well, I came up to Gillis street here, I came down on the siding there, and when I came down on the siding I see this train going east, and then I looked down east to the switch and I could see the switch where it goes into the main west line. So I walked up on the main west line, northwest a few feet and I was standing looking at this train going east. It was pulled over the track, over Gillis street, all except three or four cars, and all at once I heard something and looked up and I saw something round, and just as I saw that, why, I jumped and when I jumped it struck me—struck me on the left side, my shoulder and left arm; and I grabbed hold of something and was dragged over back here—I saw a man standing up on this, whatever it was—an oil tank or engine or tender; and as it dragged me on back here a light shone upon this man and I saw the man. And as it dragged me on, I got loose from the train some way and I dragged myself several feet away from the track—directly there was a man came to me, a couple of men and when I saw what

was the matter with me, the next thing I knew I was in the City Hospital.''

It will be noticed that he says he struck Gillis street at the railroad track, which of course was at the crossing, and that he walked down the wagon track and then a little west or southwest which would put him west of the crossing. He then, in describing how it happened, says he walked up on the main west line a few feet northwest and was standing looking at the train going east when he was struck. So that by his own admission he went a few feet west or southwest of the crossing and walked northwest before being struck. To say the least, this makes it vague as to the exact point at which he was standing when struck.

He also says that after being struck he was dragged about fifty feet and then his right ankle was run over and mangled and that he dragged himself several feet away from the track and crawled back not very far from where he got hurt. Gaffey, the switch foreman, whom plaintiff put on the stand, testified that he found him lying on the ground between *one hundred and one hundred and fifty feet west of the west side of Gillis street*. Gaffey also testified that he asked plaintiff, when he found him, what he was doing there, and plaintiff replied he was up on the bank attending to a call of nature. Gaffey then asked him, ''How the hell did you get *down here* and get cut up this way?'' And plaintiff replied he really didn't know. Gaffey swore that, on the tank cars, there was a running board clear around the car projecting out over everything else, so that, if a person was on the track, this running board would be the first thing to hit him, and, as it is about five feet from the ground, would hit him in the head. Gaffey also testified plaintiff's clothes were not torn as if he had been dragged. Gaffey also testified that, as the cars came west over the crossing, he was on the west end of the car next to the crossing, had his lantern and was keeping a lookout,

but saw no one. He further testified, from his experience as a railroad man, that if one attempts to board a moving car at the side, and misses his footing, his foot is liable to go under the wheel the first thing.

In our opinion, the admission of plaintiff that he went a little west or southwest after reaching the crossing and then walked northwest (which if true put him away from the crossing) his statement that he was dragged fifty feet from where he was struck coupled with the fact that he was found much further than fifty feet west of the crossing, and, according to the foreman, gave as his reason for being down in there that he was attending to a call of nature, and could not tell him how the injury happened together with the improbability of a man standing between the tracks and being struck by the end of a car and escaping with only his right foot cut off instead of being hopelessly mangled, is enough to show that the evidence as to his being struck at the crossing is not all one way, and this is sufficient to prevent us from interfering with the judgment of the trial court who says the verdict is against the weight of the evidence on that point. For it is the rule that, even though the appellate court may consider the evidence in a case strongly in favor of one party, yet, if the court below, has set aside a verdict in favor of that party because it was against the weight of the evidence, and there is some evidence on which to base that conclusion, the appellate court will not disturb the trial court's action. [Herndon v. Lewis, 175 Mo. 116, l. c. 125; Ottomeyer v. Pritchett, 178 Mo. 160, l. c. 165; Warner v. Railroad, 178 Mo. 125, l. c. 129; Haven v. Missouri Railroad Co., 155 Mo. 216.]

It is next urged that defendant cannot be heard to say that plaintiff was not on the crossing when struck because that fact was admitted in the answer, and because, in defendant's brief on the original hearing in this court, the case is argued from the standpoint

that plaintiff was on the crossing but that it was not such a crossing as made it the duty of defendant to keep a lookout for persons thereon. We do not think the answer contained an admission that plaintiff was on the crossing when struck. The petition alleged that plaintiff was walking south on Gillis street, and "when he came to where or near where said Gillis street is crossed by First street he found his further progress south impeded by a train on a track a few feet south of the aforesaid track of defendant; that thereupon plaintiff stood upon or very near the aforesaid track" and was thereafter struck, etc. The answer said nothing about a crossing but "admits that on or about the date and at or near the place in said amended petition mentioned an accident occurred" and then denies each and every other allegation in said petition contained. This was merely an admission that in or near that locality, i. e., the intersection of Gillis and First streets the accident occurred. The trial court evidently did not consider this an admission that plaintiff was on the crossing when struck because he gave an instruction for the defendant telling the jury to find for it if they believed plaintiff was west of the crossing in Gillis street.

It is true, that, in the brief filed by defendant on the original hearing of this cause in this court, greater stress was laid upon the point that the crossing was not such as required the defendant to maintain a lookout for it at night, and in presenting this point one or two statements are made which seem to admit that plaintiff was struck on the crossing. But we think this is rather an admission for argument's sake only, that is, in arguing the point that by reason of nonuse the crossing did not in fact require a lookout, and in presenting this point, defendant treated plaintiff's claim of being struck at the crossing as true for the time being.

Appellant also insists that in the brief presented by defendant on the rehearing, it has departed from its original theory presented at the first hearing, and now urges 'the point that plaintiff was west of the crossing as the reason the court thought the verdict was against the weight of the evidence. Of course defendant ought not to be allowed to shift from one conflicting theory to another in the different hearings. But, in the original brief, defendant urged the point that the court's reason was that the verdict was against the weight of the evidence. And the only difference, between the brief on the rehearing and the one at first is that, in the first one, great stress is laid on the point that the alleged place of injury was not really a public crossing, while in the last brief the point that the verdict was set aside because it was against the weight of the evidence was amplified and presented much more thoroughly and in detail than before. So that, in reality, there is no departure or taking of inconsistent positions.

Viewing the case as we do, we do not feel justified in interfering with the exercise of the trial court's discretion in granting a new trial. Especially do we feel thus when to set aside the court's order and reinstate the verdict is to do so solely upon the ground that, as a matter of law, we have decided the alleged place of injury is a public crossing. This would entitle plaintiff to a verdict of $7500 notwithstanding the fact that the court, believing plaintiff was away from the crossing and in the dark, thought the weight of the evidence was against the facts entitling him to a verdict. The judge before whom the case was tried was better qualified than we are to say whether the verdict should stand. He has a discretion to grant one new trial and the appellate court will not interfere with the exercise of that discretion where there is substantial evidence to support the trial court's view.

[Casey v. Transit Co., 186 Mo. 229, l. c. 232.]   The judgment is, therefore, affirmed.

*Ellison, P. J.* and *Johnson, J.,* concur, but in doing so, say that, in view of the fact that the trial court submitted the case to the jury and then sustained a motion for a new trial, it should be understood that we have passed only on the propriety of the order granting a new trial; and that it must not be necessarily inferred from this that the trial court's action, in submitting the case to the jury in the first instance, is approved.