## THE STATE v. MYRON ROBERTS, Appellant.

### Division Two, December 22, 1925.

1. **INFORMATION: Robbery.** The information set out in the opinion is a sufficient charge of robbery in the first degree in both form and substance.

2. **DEMURRER TO EVIDENCE.**  Substantial evidence tending to show that defendant committed the crime charged authorizes the court to submit the case to the jury.

3. **EVIDENCE: Former Conviction: Vagrancy.**  Vagrancy does not constitute a criminal offense under the statute (Sec. 5439, R. S. 1919).

4. ———: ———: **Record of Police Court: Arrested as Confidence Man: Conviction of Vagrancy: Pictures in Rogues' Gallery: Prejudicial Error.**  A purported record of a police court showing that defendant, being tried for robbery, had eleven years previously been convicted of vagrancy, cannot be admitted in evidence where the State's own witness testifies that it is not a court record, and particularly so, where the chief of police testifies, on behalf of the State, that he eleven years previously arrested defendant as a "suspected confidence man" and that he was tried in the police court and fined twenty-five dollars for vagrancy.  And where defendant, examined in chief and cross-examined, had not been asked if he had ever been convicted for a violation of an alleged ordinance, the admission in evidence, in connection with such purported record, of testimony of said chief of police that, after defendant was arrested as a "suspected confidence man," his photograph was taken for the rogues' gallery, he was put through the Bertillon identification system and finger prints and other record memoranda were made, and the parading before the jury of documents showing these things, in an effort to identify the defendant as the person who was convicted of vagrancy in the police court, was prejudicial error.  There being substantial evidence tending to establish defendant's defense of alibi, the manner in which the vagrancy charge was illegally featured before the jury, the incidents connected therewith branding him as a confidence man and a criminal, the taking and parading of his picture in the rogues' gallery, the compelling of him to submit to the Bertillon system of identification, all paraded before the jury in connection with the utterly incompetent alleged record of conviction of the charge of vagrancy, were well calculated to prejudice the jury against him and his defense of alibi, and require a reversal of the judgment of conviction.

Corpus Juris-Cyc. References: Criminal Law, 17 C. J., Section 3662, p. 319, n. 22; p. 320, n. 36.  Robbery, 34 Cyc. p. 1802, n. 38; p. 1810, n. 89. Witnesses, 40 Cyc., p. 2609, n. 67 New; p. 2640, n. 87, 88.

Appeal from Jackson Circuit Court.—*Hon. Thad B. Landon,* Judge.

REVERSED AND REMANDED.

*Wilbur F. Hall, Charles P. Dallam* and *Bruce Barnett* for appellant.

(1)  The court erred in admitting the record of the police court of the judgment rendered eleven years previously assessing a fine of $25 against appellant upon the charge of vagrancy.  A conviction in a municipal court for the violation of a city ordinance is not a conviction of crime, and is not admissible by way of impeachment.  R. S. 1919, sec. 5439; State v. Mills, 272 Mo. 526, 199 S. W. 134; Meredith v. Whillock, 173 Mo. App. 542.  (a)  The fact that appellant was not entitled to a trial by jury in the police court is of itself sufficient to render a police court judgment assessing a fine, inadmissible by way of impeachment.  (b)  The fact that one convicted in a municipal court of violation of a city ordinance may be confined in jail for non-payment of the fine, does not render the offense criminal, but the same constitutes imprisonment for debt, which is permissible in the case of fines or penalties under the Missouri Constitution, Art. 2, sec. 16.  (c)  The violation of a city ordinance is not a crime.  R. S. 1919, sec. 3715; Ex parte Hollwedell, 74 Mo. 401; Kansas City v. Neal, 122 Mo. 234; Sylvester Coal Co. v. St. Louis, 130 Mo. 330; St. Louis v. Knox, 74 Mo. 81; State v. Muir, 164 Mo. 610; St. Louis v. Tielkemeyer, 226 Mo. 141; City of Kansas v. Clark, 68 Mo. 588.  City ordinances, although penal, are not criminal statutes, cases supra.  (d)  Prior to the enactment of 1895, the conviction of felony only, and not of a misdemeanor, was admissible by way of impeachment.  State v. Mills, supra; Meredith v. Whillock, supra. (2)  The admission of the photograph and the Bertillon measurements of appellant, taken in connection with the police-court prosecution, did not add to nor take from the seriousness and prejudicial effect of the admission of the record above complained of, if the matter be viewed from a strictly theoretical point of view, but the

real and practical effect was to emphasize the evidence and magnify its effect upon the jury. (3) It clearly appears that the appellant's alibi was established by the great weight and overwhelming preponderance of the evidence, and the verdict of guilty must have been caused by the error above complained of.

*Robert W. Otto,* Attorney-General, for respondent; *Claud E. Curtis* of counsel.

The court did not commit reversible error by admitting into evidence a police record showing the prior conviction in a police court of Kansas City of the defendant on a charge of vagrancy. (a) It is error to admit such evidence. State v. Mills, 272 Mo. 526. (b) But every error permitted to come into the trial of a case is not prejudicial error. Where the error is not of such a nature as to materially change the results of the case this court will not reverse. R. S. 1919, secs. 1276, 1513; State v. Porter, 276 Mo. 387. (c) The evidence shows positive identification of the defendant as one of the robbers who robbed the prosecuting witness. The jury could not have returned any reasonable verdict except that of guilty. That being the case, this error is not prejudicial and should not work a reversal.

RAILEY, C.—Appellant, Myron Roberts, was charged in an indictment returned by the grand jurors with the crime of robbery in the first degree. Said indictment, without caption and signature, reads as follows:

"The grand jurors for the State of Missouri duly summoned from the body of said County of Jackson, being duly empanelled, sworn and charged to inquire within and for said county, upon their oaths present and charge that Fletcher Blaylock and Myron Roberts, whose Christian names in full are to said grand jurors unknown, on the 14th day of November, 1923, at the County of Jackson and State of Missouri, did then and there unlawfully and feloniously make an assault in and upon -

one Julian Wornall, and $937 in money, the same being good and lawful money of the United States, in the aggregate of the value of nine hundred and thirty-seven dollars, the money and personal property of the said Julian Wornall, from the person, in the presence of and against the will of the said Julian Wornall, then and there by force and violence to the person of the said Julian Wornall and by putting the said Julian Wornall in fear of an immediate injury to his person, feloniously, did rob, steal, take and carry away; against the peace and dignity of the State.''

Appellant was arraigned and entered a plea of not guilty. A severance was granted and the case tried before a jury. On May 21, 1924, the following verdict was returned:

''We, the jury, find the defendant, Myron Roberts, guilty of robbery in the first degree, as charged in the indictment, and assess his punishment at imprisonment in the State Penitentiary for five years.''

Defendant filed his motion for a new trial which was overruled. Allocution was granted, judgment rendered and sentence pronounced in conformity to said verdict. Thereafter defendant was granted an appeal to this court.

Counsel for respondent have correctly set out the testimony, as follows:

On the 14th day of November, 1923, Mr. Julian Wornall was vice-president of the Independence Avenue Bank, which was located at 2429 Independence Avenue. As such officer, he was in charge of the bank's property, and had custody of its money. The bank building faced north. The main entrance opened in the middle of the north end of the building. There was a railing at the north and on the west side. On the inside of this railing was the main office of the building. Farther up south, on the same side, were the cages of the bank. The east side constituted the lobby of the bank.

About 11:40 o'clock, November 14, 1923, while Mr. Wornall was looking in a ledger in the office part of the building for the account of a Mr. Zufelt, he heard some-

one command, "Stick 'em up, everybody." Mr. Wornall, who was facing south, turned his head toward the voice and saw a man standing in the building with a shotgun in his hands. This man commanded a Mr. Bowser, who was inside the cage, to get the money out of the safe. Mr. Wornall explained that Mr. Bowser did not know where the money was, so he (Wornall) got the money and put it in a sack for the robber. After checking up, the bank was found to be nine hundred and thirty-seven dollars short. During the time this man above mentioned, who was later identified as Grant Hartnell, was getting the money, there were two other robbers with him in the front part of the building. Wornall could not see who they were. Mr. Zufelt, however, identified the defendant, Myron Roberts, as one of the men who held a gun on him during the robbery. After these men had taken the money, they left the bank and went a short distance to a car in which they drove away.

The evidence on the part of appellant tends to establish an alibi. G. W. Cravens, Martin E. Speck, Frank William Ferguson, Mrs. Myron J. Roberts, Mrs. Clara O. Lingo, Alma Roberts and Anna Roberts, testified, in substance, that at the time of the robbery, this appellant was working on his mother's farm, where he resided, about six miles northeast of Independence, Missouri, a distance of about sixteen miles from the place of the robbery. Mrs. Lingo is appellant's mother, Alma Roberts is his brother, Anna Roberts his sister-in-law and Mrs. Myron Roberts is his wife. The other witnesses, G. W. Cravens, Martin E. Speck and Frank William Ferguson were not related to appellant by blood or otherwise and were not impeached.

It further appears from the record that the good reputation of appellant was testified to by B. J. Scott, former chief of police of Independence, Missouri, and by witnesses G. W. Cravens, Martin E. Speck and Frank William Ferguson.

Several witnesses testified in behalf of the State that they knew defendant and saw him on a wagon

hauling a load of wood going west toward Independence, about three miles from his home on November 14, 1923. Other facts were testified to by said witnesses, tending to contradict the testimony of defendant and his witnesses in relation to an alibi.

The alleged errors complained of will be considered in the opinion.

I. The information set out is sufficient as to both form and substance. It charges defendant with robbery in the first degree, and is fully sustained by the statute and rulings of this court. [Sec. 3307, R. S. 1919; State v. Flynn, 258 Mo. l. c. 214, 224; State v. Eddy, 199 S. W. l. c. 187-8; State v. Huffman, 238 S. W. l. c. 431, 435; State v. Affronti, 292 Mo. 53, 238 S. W. l. c. 109; State v. Yates, 252 S. W. l. c. 644; State v. Roderman, 297 Mo. l. c. 147-8, 248 S. W. l. c. 965; State v. Brazel, 270 S. W. 273; State v. Strada, 274 S. W. 34-5.]

*Information.*

II. The State produced substantial evidence tending to show that defendant committed the crime charged against him. The court thereof committed no error in overruling defendant's demurrer to the evidence at the conclusion of the case. [See authorities cited under preceding proposition.] On the other hand, defendant produced substantial testimony tending to prove an alibi, and that he was sixteen miles distant from the scene of the robbery when it occurred.

*Demurrer.*

III. The appellant in his brief has made but two assignments of error, which he relies on in seeking a new trial of the cause. The first assignment reads as follows:

"The court erred in admitting the record of the police court of the judgment rendered eleven years previously assessing a fine of $25 against appellant upon the charge of vagrancy. A conviction in a municipal court for the violation of a city ordinance is not a con-

viction of crime, and is not admissible by way of impeachment.''

The above statement of the law is sustained by the authorities hereafter cited.

Section 5439, Revised Statutes 1919, reads as follows:

''Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry and the party cross-examining shall not be concluded by his answer.''

In State v. Mills, 272 Mo. 526, we held that a charge of vagrancy did not constitute a *criminal offense* under above statute.

The defendant was examined in chief and cross-examined by the State. No mention was made in either examination of any alleged conviction of defendant in the Municipal Court of Kansas City, Missouri, on September 26, 1913. Up to this time, the defendant had never been asked whether he had ever been convicted for violating an alleged ordinance of Kansas City. Over the objection of defendant, the court permitted counsel for the State to read, as evidence, a purported record of the Municipal Court of Kansas City, dated September 26, 1913, eleven years before this trial, as follows:

''Case No. 34,619. Kansas City versus Myron Roberts. Complaint filed this September 26, 1913, charging defendant with vagrancy. Defendant brought into Municipal Court, Division No. I, at which time said cause coming on to be heard, and the complaint being read, the defendant pleaded not guilty and witnesses being produced, sworn and examined, and the case remanded to Municipal Judge, Division No. One, said Municipal Judge, Division Number One, finds that the defendant is guilty and the offense charged in said complaint, committed within the corporate limits of Kansas

City, and Kansas City, Missouri, and within the territorial limits of Division No. One.''

''[It is put on with a stamp. I can't quite make it out.]

''And a fine in the sum of twenty-five dollars ($25.00) imposed upon the defendant for such offense.

''Wherefore, it is adjudged that the City of Kansas City have and recover of and from the defendant the sum of twenty-five dollars, together with costs in the sum of fifty cents, and stand committed until discharged by due course of law.

''CLARENCE A. BURNEY, Municipal Judge.

''Division Number One.

''Witnesses: Walston and Smith.''

It was not shown to be a valid document. Mr. Gordon, a witness for the State, testified that the above quoted record was not a copy of the court record, and yet it was permitted, over defendant's objection, to be considered as evidence in the case tending to show that defendant had been fined $25 for alleged vagrancy, which. was not shown to have been a crime. Isaac B. Walston, chief of police at Kansas City, Missouri, testified in behalf of the State, over objection of defendant, that he arrested the latter eleven years before as a suspected confidence man, and a picture was taken of him which was offered and considered in evidence over the objection of defendant.

Counsel for appellant, in their brief, have correctly set out what the transcript shows in respect to the testimony of the chief of police and other witnesses in regard to above charge of vagrancy, as follows:

''The prosecution featured this police court judgment in the following manner: The charge of vagrancy was in fact, as shown by the evidence, placed against appellant because of a suspicion that he was a 'confidence man.' No evidence being found to establish such a charge, he was prosecuted in the Kansas City Municipal Court for vagrancy. Despite the diligence of appellant's counsel to prevent the record being infested with such damaging irrelevancy, the Kansas City chief of detec-

tives, namely, Isaac B. Walston (misspelled Walton in the transcript), blurted out the voluntary statement that appellant was arrested as a 'suspected confidence man.'

"No record on other evidence was offered to show any fact to reflect that appellant was ever a 'confidence man,' but that he was arrested as a 'suspected confidence man.' And being a 'suspected confidence man' he was arrested and his photograph was taken for the rogues' gallery and he was put through the Bertillon identification system like the criminal he was 'suspected' to be. And the photograph and the Bertillon measurements, and the finger prints and every memorandum record of the arrest, were paraded before the jury, all of which was admitted over objections and exceptions to identify this appellant as the same man who, eleven years before, had been arrested as a 'suspected confidence man' and fined $25 in the police court for vagrancy. The $25 fine in the police court was featured by bringing forth the proof piece-meal in such manner as to cover seventeen pages of the typewritten transcript of the record, namely, pages 176, 177, 178, 180, 183, 184, 185, 213, 214, 215, 216, 217, 218, 220, 221, 222 and 223. And thus did the prosecution, by means of a record of a $25 fine for vagrancy in the police court, hold up this appellant to the jury as a 'confidence man.' "

Counsel for the State concede that error was committed in admitting the above evidence, but suggest that defendant was not prejudiced thereby. The alleged judgment offered in evidence was not a true copy of the record, and should have been excluded. The entire proceedings relating to said record were utterly incompetent as evidence against defendant. [Sec. 5439, R. S. 1919; State v. Mills, 272 Mo. 526 and cases cited; St. Louis v. Tielkemeyer, 226 Mo. l. c. 141; Meredith v. Whillock, 173 Mo. App. 542.] It is possible that defendant may be guilty of the crime with which he is charged, but he offered substantial evidence tending to show an alibi, and was entitled to a fair and impartial trial on the merits before the jury.

The manner in which this vagrancy charge was illegally featured before the jury; the incidents connected therewith branding him as a confidence man and criminal; the taking and placing of his picture in the rogues' gallery; and compelling him to submit to the Bertillon identification, were well calculated to prejudice the jury against defendant and his defense of alibi. The treatment of defendant under the circumstances aforesaid, reflected no credit on the representatives of the State who were conducting this prosecution and should not be permitted to stand.

The judgment below is accordingly reversed and the cause remanded for a new trial. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.