OTTO STOKES v. WABASH RAILROAD COMPANY, a Corporation, Appellant, and ROY BROOKS, Defendant.—No. 39751.—197 S. W. (2d) 304.

Division Two, October 14, 1946.

Rehearing Denied, November 11, 1946.

*Joseph A. McClain, Jr.,* General Counsel, *Lashly, Lashly, Miller & Clifford, Oliver J. Miller* and *Robert G. Maysack* for appellant.

604

*C. O. Inman* and *Frank Mattes* for respondent.

606

TIPTON, J.—Respondent recovered a judgment for $35,000 against appellant in the circuit court of the City of St. Louis for personal injuries he alleged he received when, as a pedestrian, he was struck by one of appellant's trains at a crossing in Kirksville, Missouri. The jury's verdict was in favor ▓ of appellant's co-defendant, Roy Brooks, the engineer who operated the train.

Appellant's first assignment of error is that "plaintiff was guilty of contributory negligence as a matter of law, so verdict in his favor was erroneous." The case was submitted to the jury solely upon the humanitarian doctrine. We have consistently ruled that contributory negligence is no defense under this doctrine.

Appellant's next assignment of error is that the "verdict for plaintiff was against the weight of the evidence, so trial court should have granted a new trial." No authority is needed to show that such an assignment is a matter to be decided solely by the trial court. Appellant cites the cases of McWilliams v. Mo. Pac. Ry., 172 Mo. App. 318, 157 S. W. 1001, and Steele v. Kansas City Southern Railway Co., 265 Mo. 97, 175 S. W. 177. In both of these cases the trial court sustained a motion for a new trial for the reason that the verdict was against the weight of the evidence, while in the case at bar the trial court overruled appellant's motion for a new trial.

Appellant's third assignment of error is that respondent's evidence was not sufficient to make a humanitarian case. This calls for a review

of the evidence and in doing so we will state the facts most favorable to respondent. Respondent's testimony was that he had been out Saturday evening, August 14, 1943, with his wife and sister-in-law. He visited various taverns in Kirksville, Missouri, and drank about six beers. About 11:00 P. M. he went to his home, located at 703 West Pierce Street in Kirksville, and went to sleep. About 12:30 A. M. his wife awakened him and sent him back down town to look for his sister-in-law's husband, Mr. Robinson, who had apparently been lost during the course of the evening. Respondent looked for Mr. Robinson at two restaurants but was unable to find him. About 1:30 or 2:00 A. M. while returning home he was struck by appellant's passenger train at the West Pierce Street crossing. This street is the second street south of appellant's station. There are two railroad tracks crossing Pierce Street; the main line is the east track and the west track is a switch track which extends south for about a block.

Respondent testified that as he returned home he walked west along the south sidewalk of West Pierce Street and, when about 12 feet from the east rail of the main line, he stopped to let a west bound automobile pass him. This automobile had a blown muffler and was making a great deal of unnecessary noise. He then looked to the north, saw no train or headlight, and heard no bell or whistle. Then he looked south, and watched what appeared to be a lantern, thinking there might be a switching movement. He continued to walk west with his head turned to the south at about 2 miles an hour, and when he stepped on the west rail he heard the rumble of the train. Looking north he saw the train about 5 to 10 feet from him. He immediately attempted to jump off the track and while still in the air he was struck by some part of the engine. He stated that he still heard the noise from the automobile at this time.

The evidence showed that the train was going 10 miles an hour and that the train brake and headlight were standard equipment. James T. Walker, an experienced locomotive engineer, testified that after allowing for average reaction time and time for the fireman to notify the engineer to set the brakes, this train going 10 miles an hour could have been stopped with an emergency application with safety to the passengers in 25 to 37 feet, and with a service application of the air in 39 to 43 feet. Defendant, engineer Brooks, testified that he could not see a man on the fireman's rail closer than 38 to 40 feet.

Appellant contends that since the jury found in favor of the engineer Brooks, it necessarily found that respondent was not in a position of peril when the engine was 38 to 40 feet from the point of collision, and by the jury's verdict "plaintiff came into a position of peril after that time," hence there was not sufficient time for the engineer to do anything to avoid injuring respondent. If this is true then there might be some merit in appellant's contention, but a sufficient answer to this contention is that the instruction did not

limit recovery to the failure of the engineer alone to discover respondent in a position of peril, but also included the duty of the fireman to discover him in a position of peril. Evidently the jury, by its verdict, found that the fireman was negligent in not discovering respondent in a position of peril.

A person about to go upon a railroad crossing is in a position of peril when he is oblivious to the approaching train, and by his actions and conduct it is apparent to a reasonable, prudent trainman that he is oblivious to the approaching train, and if after getting into a position of peril, the operators of the engine, having the means at hand to avoid the collision, fail to do so, a prima facie case is made under our humanitarian doctrine. Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482; Teague v. Plaza Express Co. et al., 354 Mo. 582, 190 S. W. (2d) 254.

Appellants contend that respondent was not oblivious to the approaching train because he testified that when he was 12 feet from the east rail of the main line he looked to the north. In English v. Wabash R. Co., 341 Mo. 550, 108 S. W. (2d) 51, and Hilton v. Terminal R. Assn. of St. Louis, 345 Mo. 987, 137 S. W. (2d) 520, we ruled that to look is no conclusive evidence of seeing, but merely a circumstantial evidence of seeing, that it was a question for the jury to determine whether the injured person actually saw the oncoming train. Since respondent testified that he did not see the train when he looked, the question of his obliviousness was one for the jury. Respondent testified that after looking to the north he looked south, and continued to do so until he reached the west rail of the track, a distance of 12 feet plus the distance between the east and west rails of the main line. All this distance he could have been seen by the fireman, and it was for the jury to decide if respondent's conduct showed to him that respondent was oblivious to the approaching train. The train was going 10 miles an hour and it could have been stopped in 25 to 30 feet, therefore, we hold that the jury could have found that he was in a position of peril from the time he was 12 feet away from the east rail of the main line, and the train could have been stopped or at least its speed slackened so as to have prevented respondent's injuries.

Appellant assigns as error the giving of respondent's instruction No. 1. Its first contention is that the last phrase of the instruction is erroneous. It reads: ". . . and this is true even though you should further find and believe from the evidence that the plaintiff was himself guilty of negligence which directly contributed to cause his said injuries." When appellant made its objection to the trial court prior to the time this instruction was read to the jury, the above objection was not made, therefore, under our rule 3.21 the point is not before us. However, upon the merit of this point, the curious may examine the cases cited in Missouri Digest, Vol. 22, Negligence, Key Number 141 (9).

Appellant also contends that the instruction is erroneous since it was predicated upon respondent's obliviousness to peril because there is insufficient evidence that respondent was oblivious. We have already ruled this point against appellant.

Appellant contends that the instruction is erroneous because it improperly broadened the danger zone of imminent peril as it allowed recovery for respondent if he was approaching a position of imminent peril. This instruction is not open to such objection. Note its language: ". . . as the plaintiff approached and went upon the tracks aforesaid he came into and was in a position of imminent peril" and ". . . the plaintiff in such position of imminent peril and oblivious thereto." This instruction is not similar to the instructions in the cases of Hilton v. Terminal R. R. Co., supra, and Evans v. Farmers Elevator Co., 347 Mo. 326, 147 S. W. (2d) 593.

Appellant next contends that the "court erred in refusing to read to jury a form of verdict under which they could have found in favor of defendant Wabash Railroad and against defendant Brooks." Appellant advances the theory that defendant Brooks' misconduct might have amounted to a felonious wounding, and that the master is not liable for the criminal acts of his servants. There is no evidence that would sustain such a theory; in fact, appellant's testimony is that neither engineer Brooks or the fireman saw respondent. It was appellant's theory that respondent was not hit by the train but that he boarded the train at the station and was injured trying to alight from it. Since no such charge against defendant Brooks was contained in the pleading, nor evidence to support it, the court properly refused appellant's request. There is no dispute that defendant was acting as the engineer of appellant's train and was acting in the scope of his employment. Under these circumstances, the jury could not have found Brooks negligent without finding that appellant was liable.

Appellant further contends that since the jury's verdict absolved defendant Brooks, the engineer, while holding appellant liable, it is inconsistent and cannot stand.

"For the negligent performance of duty by the servant, both the servant and the master are liable to third parties under the rule of respondeat superior, but where the servant is charged with the negligence causing the injury complained of, and both the servant and the master are joined as defendants, and the petition imputes the negligence of the servant to the master and relies *solely* on the negligence of *such* servant, then a verdict of the jury finding the servant not guilty of negligence, ipso facto, discharges the master, although the verdict is against the master. McGinnis v. Chicago, R. I. & P. R. Co., supra; Devine v. Kroger Grocery & Baking Co., 349 Mo. 621, 162 S. W. (2d) 813, loc. cit. 816, 817, and cases there cited. On the other hand, if the liability of the master is not predicated *solely* upon the

negligence of the servant in whose favor a verdict has been 'found, but as well upon the negligence of another servant, then the verdict against the master will be sustained notwithstanding the verdict in favor of the servant. Devine case, supra, 162 S. W. (2d) loc. cit. 817.'' Atterbury v. Temple Stephens Co. et al., 353 Mo. 5, 181 S. W. (2d) 659, l. c. 662.

If defendant Brooks had been the only servant of appellant who could have been negligent, then appellant's point would be well taken, but neither the petition nor the instructions based respondent's right to recover solely upon Brooks' negligence.

 Appellant contends that the trial court erred in not permitting it to show that respondent had been arrested and convicted in police court. During the direct examination of respondent he testified that he quit school after the seventh grade, and that he worked as a miner, farmer and plumber's helper. He entered the Army August 17, 1942, and was honorably discharged on April 17, 1943. It is appellant's contention that it had a right to ask about his arrests and police court convictions. Mr. Miller, appellant's attorney, sought to show that he had been arrested and convicted in the police courts and in his offer of proof stated: ''I offer this merely as part of his background and history to get a true picture of this man.'' When this offer was made, the court replied: ''I am not denying you the right to show whether he was guilty of misconduct of a wrongful or immoral nature, but my ruling is on the question of arrests and police court convictions for mere violations of city ordinances.'' To this Mr. Miller answered, ''That is all I have.'' The court then sustained the objection to the offer of proof.

The offer of proof did not attempt to prove that respondent had ever been convicted of either a felony or a misdemeanor, but that he had been convicted only of violating city ordinances. ''However, it is not proper to ask a witness whether he has been convicted in a police court for violating a city ordinance. Meredith v. Whillock, 173 Mo. App. 542, 158 S. W. 1061; State v. Roberts, 311 Mo. 521, 278 S. W. 971; State v. Mills, 272 Mo. 526, 199 S. W. 131; 40 Cyc., p. 2611; 28 R. C. L., p. 626.'' Daggs v. St. Louis-San Francisco Ry. Co., 51 S. W. (2d) 164, l. c. 167. The violation of a city ordinance is not a criminal offense but a civil action to recover a debt or penalty due the city for the infraction of its ordinances. State v. Mills, 272 Mo. 526, 199 S. W. 131. We hold the trial court properly refused to admit this evidence.

 Appellant's last contention is that the verdict was excessive. Respondent contends that this assignment of error was not raised in appellant's motion for a new trial and, therefore, that this question cannot be reviewed by us. Unless assignment sixteen in appellant's motion for a new trial can be considered to raise the question, it was not raised in appellant's motion for a new trial. That assignment

is as follows: "The verdict as against this defendant should be set aside because the damages awarded under the verdict against this defendant were and are the result of bias and prejudice, and were not and are not based upon the testimony, and were not and are not warranted by the testimony."

"There is a vital distinction between the specified ground, 'because the verdict is excessive (or inadequate)' and the ground, 'because the verdict is so grossly excessive (or inadequate) as to indicate that it was the result of bias and prejudice.' The distinction is heretofore particularly noticed by this court in the case of Sofian v. Douglas, 324 Mo. 258, 23 S. W. (2d) 126, at page 129, trial courts 'may pass on the weight of the evidence in considering the size of a verdict . . .; whereas appellate courts do not weigh the evidence in reviewing a law case, . . .; and in view of their better opportunity to measure the general effect of the trial proceedings on the jury, they (trial courts) *may infer prejudice and bias from the size of the verdict alone,* a thing which, as we have seen is held, appellate courts cannot do. In ruling the verdict in this case was so inadequate as to indicate prejudice and bias, *the trial court* necessarily concluded the verdict was for substantially less than it ought to have been under the evidence—in other words, it *held the verdict was so much against the weight of the evidence as to show bias and prejudice. On neither of these grounds* would this court be justified in interfering under the record' (our italics) of that case.

"In considering each of the specified grounds the trial court may be said to have weighed the evidence, yet the reasons for sustaining the motions upon the respective grounds are essentially different. The specified ground, 'because the verdict is excessive,' is indicatory of no more than an honest mistake of the jury in the weighing of the evidence pertaining to the nature and extent of an injury and in assessing compensation therefor, whereas the specified ground, 'because the verdict is so grossly excessive as to indicate that it was the result of bias and prejudice,' savors of misbehavior on the part of the jury. A fair and impartial consideration of the evidence by the jury is vital to a verdict's incipient validity. King v. Mann, 315 Mo. 318, 286 S. W. 100; Chlanda v. St. Louis Transit Co., 213 Mo. 244, 112 S. W. 249; Bente v. Finley, Mo. App., 83 S. W. (2d) 155; Rigby v. St. Louis Transit Co., 153 Mo. App. 330, 133 S. W. 110; Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin, 283 U. S. 520, 51 S. Ct. 501, 75 L. Ed. 1243; State of Mississippi, for the Use of Smith et al. v. Brabham, Sheriff, 5 Cir., 96 F. 2d 210. Should the jury have been actuated by bias and prejudice in assessing the amount of the award, so may they have been actuated in their finding upon the issue of liability." Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S. W. (2d) 157, l. c. 159.

612

A verdict that is the result of passion and prejudice is the result of misconduct of the jury and should be set aside, regardless of its amount, but a verdict that is excessive is no evidence of misconduct of the jury, and an honest mistake as to the amount can be cured by remittitur. We hold that the question of excessiveness of the verdict is not properly before us.

From what we have said, it follows that the judgment of the trial court should be affirmed. It is so ordered. All concur.